UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| GRACE BOADI,            ) <br>        Plaintiff     ) <br> v.                     ) <br>                      ) <br> CENTER FOR HUMAN    ) <br> DEVELOPMENT, INCORPORATED,   ) <br> JEFFERY TRANT        ) <br> And  CANDY PENNINGTON,   ) <br>        Defendants    ) | CIVIL ACTION NO.: |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### JURISDICTION

1.   This action is authorized and instituted under §706 Title VII of the Civil Rights Act of

1964 as amended, 42 U.S.C. §2000e, *et seq*.  Jurisdiction is founded on U.S.C. §1331 and

§1337.

2.   This action involves the application of the Family Medical Leave Act of 1993 ("FMLA"),

29 U.S.C. §2601 et seq.  This Court has jurisdiction pursuant to 29 U.S.C. § 2617.

3.   Federal jurisdiction is also founded on diversity jurisdiction pursuant to 28 U.S.C. §1332,

as the parties are citizens of different states and the amount in controversy exceeds

$75,000.00.

### VENUE

4.   The claims asserted in this action arose within this district and the alleged unlawful

conduct and damage occurred within this district.  This venue is proper pursuant to 29

U.S.C. § 2617 and 28 U.S.C. § 1391.

## THE PARTIES

5.  The Plaintiff, Grace Boadi, is a natural person with a principle residence at 6G Townhouse Road, Broadbrook, Connecticut.

6.  The Defendant, Center for Human Development, Incorporated, is a nonprofit corporation organized under the laws of Massachusetts, with a usual place of business at 332 Birnie Avenue, Springfield, Massachusetts.

7.  The Defendant, Candace Pennington, is a natural person with a usual place of business at 332 Birnie Avenue, Springfield, Massachusetts and, upon information and belief, has a principle residence at 6 Miami Street, South Hadley, Massachusetts.

8.  The Defendant, Jeffrey Trant, is a natural person with a usual place of business at 332 Birnie Avenue, Springfield, Massachusetts and, upon information and belief, has a principle residence at 61 Yankee Circle, Westfield, Massachusetts.

## FACTS

9.  The Plaintiff was hired by the Defendant CHD on or about December 16, 2003 to work as a Medication Administrator.

10. Plaintiff has a good work record and received positive performance evaluations.

11. On or about April 15, 2013, Plaintiff went to the Emergency Room at Mercy Medical Center in Springfield, MA due to her experiencing an unknown illness that was causing her to feel dizzy and faint.  She was admitted to the hospital that day.

12. The same day she was admitted to the hospital, the Plaintiff asked her son, James Takyi, to call her employer, the Defendant CHD, to let them know she was hospitalized and that the doctors did not know how long she would be admitted. Mr. Takyi called the on-call supervisor, "Stacy", to inform her that Plaintiff was in the hospital. Stacy advised him to speak with Plaintiff's supervisor, Darlene Thomas.

13.    Plaintiff's son then called Darlene Thomas, and informed her that Plaintiff was
       hospitalized and they were unsure for how long. Ms. Thomas advised Mr. Takyi that he
       should also call Human Resources and the Acting Director, Candy Pennington.

14.    On or about April 16, Plaintiff's son spoke with Julianne Shea in Defendant CHD's,
       Human Resources Department and explained that Plaintiff was hospitalized and may be
       absent from work. Ms. Shea requested that Plaintiff provide medical documentation after
       she gets out of the hospital. Mr. Takyi left his telephone number with Ms. Shea.

15.    The same day Plaintiff spoke with Julianne Shea, Plaintiff's son called Defendant
       Pennington to inform her of Plaintiff's hospitalization. Mr. Takyi also left his telephone
       number with Defendant Pennington so she could communicate with his mother through
       him.

16.    Plaintiff was not scheduled to work until April 19, 2013.

17.    During her employment with Defendant CHD, on at least two other occasions prior to her
       hospitalization in April, 2013, Plaintiff used her son to communicate to Defendant CHD
       when she was unable to do so herself and she was unable to go to work due to injury or
       illness. It had always been an acceptable method of communication and she is unaware
       of any prohibition of such a protocol and was never told this was not allowed.

18.    Plaintiff remained hospitalized until April 24, 2013. During that time, she was
       transferred to two other hospitals: Pembroke Hospital in Pembroke, MA and South Shore
       Hospital in South Weymouth, MA.

19.    While Plaintiff was hospitalized, she was suffering from a seizure disorder. Her
       condition caused her to fall and hit her head while she was hospitalized, which is one of
       the reasons for her extended stay, and her transfer to South Shore Hospital. She was
       diagnosed as having Conversion Disorder with Seizures.

20.     On April 18, 2013, while on his way to see his mother, who had just been transferred to South Shore Hospital, Plaintiff's son received a call from Defendant Candy Pennington. Ms. Pennington asked how Plaintiff was doing and asked if she was able to speak for herself. Plaintiff's son explained that his mother was not doing well but believed she was awake enough to speak to him. Defendant Pennington requested that Plaintiff contact her when she was able to.

21.     Plaintiff was released from the hospital late in the day on April 24, 2013. The next morning she called Defendant CHD's Human Resources Department and spoke with Julianne Shea who asked Plaintiff for medical records relating to her absence and told Plaintiff she needed to come into the office to fill out some forms for purposes of applying for short-term disability.

22.     The same day that the Defendant CHD requested medical documentation, Plaintiff's doctor faxed the records to Defendant CHD's Human Resources Department. The doctor also sent a note indicating that Plaintiff would need to be out of work for another four weeks.

23.     On April 26, 2013 Plaintiff went to the Defendant CHD's Human Resources Department and filled out what she believed to be short-term disability forms. Julianne Shea told her they had the doctor's note and records and they knew she was going to be out of work for another four (4) weeks. Julianne Shea told Plaintiff she was "all set" and also suggested that Plaintiff keep in touch with her supervisor.

24.     Following Julianne Shea's direction, Plaintiff called her supervisor, Darlene Thomas. However, Ms. Thomas was on vacation so Plaintiff left a voice message explaining that she was going to be out for an additional four (4) weeks due to her condition.

25.     On April 29, 2013, after a couple days passed and not hearing back from her supervisor, Plaintiff contacted the Acting Director, Defendant Pennington, to make sure she knew that Plaintiff would be out of work.

26.     When Plaintiff spoke with Defendant Pennington, she was told by Ms. Pennington that the Director of Human Resources, Jeffery Trant, was going to be calling her to discuss why she herself did not call from the hospital.  Plaintiff protested that she had worked for the Defendant for almost ten (10) years and during that time she has used that same protocol several times and it was never questioned.  She further explained that her son was told by Human Resources to provide medical records when she returned to work. Plaintiff expressed her belief that she did what was asked of her and that she did nothing wrong. Defendant Pennington's response was that Plaintiff should check her mail and expect a letter from Defendant Trant.

27.     Plaintiff asked Defendant Pennington to clarify whether she should expect a call or a letter from Defendant Trant and Defendant Pennington said "both."

28.     Plaintiff did not receive any communication from the Defendants between April 29, 2013 and May 4, 2013.

29.     On or about May 4, 2013, Plaintiff received a letter from Defendant CHD, specifically Defendant Trant, informing her that she was terminated.

30.     The termination letter was dated April 22, 2013 and the date of termination stated in that letter is April 21, 2013.

31.     The reason given for the termination was "job abandonment" and "voluntary resignation" for failing to report to work on April 19, 20 and 21, 2013; even though the letter acknowledges that they were notified by her son.

32.    At no time did the Defendants inquire or offer any type of accommodation to the Plaintiff, nor did they offer the Plaintiff the use of time off pursuant to the Family Medical Leave Act.

33.    Since the Plaintiff's hospitalization and her subsequent termination from employment, the Plaintiff has continued to experience symptoms related to her conversion disorder, including dizziness, sleeplessness, seizures and fainting.  She has not been able to receive proper treatment due to the cost and her lack of health insurance coverage.  She has visited a neurologist but has not been able to get the recommended neurological evaluations or treatment.  She also began counseling for depression, which she has suffered from since her termination; however, she has been unable to visit with her therapist as often as recommended because she has not had adequate health insurance.

34.    Plaintiff's condition causes difficulty with everyday functions, such as sleeping, driving, concentrating and eating.

### COUNT I
### FAMILY MEDICAL LEAVE ACT, 29 U.S. CODE § 2615

35.    Plaintiff repeats and realleges her allegations set forth in paragraphs 1 through 34 and further alleges the following:

36.    The Defendants, CHD, Trant and Pennington are all "employers" as that term is defined in the FMLA, 29 U.S.C. §2611(4).

37.    The Plaintiff is an eligible "employee" as that term is defined in the FMLA, 29 U.S.C. §2611(2).

38.    Due to the seriousness of the Plaintiff's unforeseen medical condition, which caused her to be hospitalized for approximately ten (10) days, there existed an "entitlement to leave" as defined in FMLA, 29 U.S.C. § 2612 (a)(1)(D).

27872-1/00245784.DOCX;1                                      6

39.    By providing notice of her serious health condition, through her son's communication with the shift supervisor, the Plaintiff's direct supervisor, Darlene Thomas, the Human Resources representative, Julianne Shea and the Acting Director, Defendant Pennington, the Plaintiff provided sufficient notice to the Defendant of her need for FMLA covered time off.

40.    Plaintiff was entitled to restoration to her position as Medication Administrator as required by the FMLA, 29 U.S.C. §2614 (1).

41.    As a result of the Defendant denying the Plaintiff leave for her serious health condition and subsequently terminating the Plaintiff's employment, Defendant CHD is liable to the Plaintiff for damages as described in the FMLA, 29 U.S.C. § 2717(a).

42.    As a result of the Plaintiff's employment termination and denial of FMLA rights, Plaintiff has incurred and continues to incur a loss of wages and employment benefits and continues to incur medical expenses.

WHEREFORE, the Plaintiff respectfully prays for:

     A. Judgment against the Defendant;

     B. Back pay and interest thereon;

     C. Compensatory damages;

     D. Punitive damages;

     E. Reasonable attorneys' fees;

     F. The costs of bringing this action;

     G. Prejudgment interest; and

     H. Such further relief as is just and equitable

## COUNT II
### AMERICANS WITH DISABILITIES ACT OF 1990, AS CODIFIED, 42 U.S.C. §§ 12112 - 12117 (AMENDED BY THE ADA AMENDMENTS ACT OF 2008 AND THE CIVIL RIGHTS ACT OF 1991)

43.    Plaintiff realleges her allegations set forth in paragraphs 1 through 34 *supra* and further alleges the following:

44.    Plaintiff was a member of a protected class; i.e.: she is an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that she held prior to the unlawful termination by Defendant.

45.    At all times relevant, Plaintiff's job performance was satisfactory.

46.    At the time the Defendants discriminated against the Plaintiff, they perceived the Plaintiff to have a disability.

47.    Defendant terminated the Plaintiff from her employment on April 21, 2013 due to her qualified disability.

48.    The conduct of the Defendants, individually and through their agents, supervisors and employees, as described above, constitutes unlawful discrimination prohibited by 42 U.S.C. §§ 12112 - 12117, such that the Defendant is liable to Plaintiff for damages and other relief as set forth below.

49.    The Defendant, through its employees, engaged in the discriminatory conduct and practices alleged herein with malice or with reckless indifference to the Plaintiff's federally protected rights, and the Defendant is therefore subject to the imposition of punitive damages.

WHEREFORE, the Plaintiff respectfully prays for:

      A.    Judgment against the Defendant;

      B.    Back pay and interest thereon;

      C.    Compensatory damages;

D.      Punitive damages;

E.      Reasonable attorneys' fees;

F.      The costs of bringing this action;

G.      Prejudgment interest; and

H.      Such further relief as is just and equitable.

## COUNT III
### (Discrimination in Violation of M.G.L. c. 151B)

50.     Plaintiff repeats and realleges her allegations set forth in paragraphs 1 through 34 *supra* and further alleges the following:

51.     Plaintiff was a member of a protected class; i.e.: she is a qualified handicapped person, capable of performing the essential functions of the position she held prior to the unlawful termination by Defendant, with or without reasonable accommodation.

52.     At all times relevant, Plaintiff's job performance was satisfactory.

53.     At the time the Defendants discriminated against the Plaintiff, they perceived the Plaintiff as being handicapped.

54.     Defendant terminated the Plaintiff from her employment on April 21, 2013 due to her protected class status.

55.     The conduct of the Defendants, individually and through their agents, supervisors and employees, as described above, constitutes unlawful discrimination prohibited by M.G.L. c. 151B such that the Defendant is liable to Plaintiff for damages and other relief as set forth below.

WHEREFORE, the Plaintiff respectfully prays for:

A.      Judgment against the Defendant;

B.      Back pay and interest thereon;

C.      Compensatory damages;

D.      Punitive damages;

E.      Reasonable attorneys' fees;

F.      The costs of bringing this action;

G.      Prejudgment interest; and

H.      Such further relief as is just and equitable.


**THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.**

                              PLAINTIFF,
                              GRACE BOADI

                              By her attorney,


Dated: September 4, 2014      _____
                              Shawn M. Willis, Esq.
                              BBO#: 653099
                              COOLEY, SHRAIR, P.C.
                              1380 Main Street, 5th Floor
                              Springfield, MA 01103
                              Tel:  (413) 781-0750; Fax:  (413) 733-3042
                              **swillis@cooleyshrair.com**