UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GRACE BOADI,<br><br>                Plaintiff,<br><br>v.<br><br>CENTER FOR HUMAN<br>DEVELOPMENT, INCORPORATED,<br>JEFFERY TRANT,[1] and CANDY<br>PENNINGTON,<br><br>                Defendants. | CIVIL ACTION NO. 3:14-cv-30162-KAR |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

This case arises out of Plaintiff, Grace Boadi's ("Plaintiff" or "Boadi"), employment with and separation from Defendant, Center for Human Development, Inc. ("CHD"). Boadi was employed as direct care staff in one of the group homes in CHD's Community Re-Entry Program ("Program"), a residential program that provides supportive housing services to adults with mental illness. Boadi had a history of not showing up to work on time and failing to comply with the Program's call-out policy. Ultimately, in April 2013, this pattern of behavior caught up to her when she altogether failed to show up for work and did not call out in accordance with the Program's policy for three consecutive days, which resulted in her employment ending pursuant to CHD's job abandonment policy.

Boadi has filed a three-count complaint against Defendants, her former employer CHD and Candy Pennington ("Pennington") (collectively "Defendants"), which alleges disability discrimination in violation of the Americans with Disabilities Act ("ADA") and M.G.L. ch.

---

[1] Plaintiff withdrew her claims against Jeffrey Trant on July 18, 2016.

1

151B and a violation of the Family and Medical Leave Act ("FMLA"). (See Complaint) All counts are ripe for summary judgment. Defendants are entitled to summary judgment on Plaintiff's claims of disability discrimination asserted under the ADA and M.G.L. ch. 151B, in Counts II and III, because the undisputed facts demonstrate that: (1) Defendants had no knowledge of Boadi's purported disability, and, as such, Boadi cannot establish a *prima facie* case; (2) Boadi's employment ended pursuant to CHD's job abandonment policy, which was clearly a legitimate, non-discriminatory reason for her separation; and (3) there is not a scintilla of evidence in the record suggesting that this reason was pre-textual. Defendants are also entitled to summary judgment on Plaintiff's claim(s) asserted under the FMLA, in Count I, because the undisputed facts demonstrate that Boadi's employment would have ended pursuant to CHD's job abandonment policy regardless of whether she exercised her rights under the FMLA, and, as such, she cannot establish a *prima facie* case. Further, all other facts demonstrate that FMLA had nothing to do with her separation. Accordingly, Defendants Motion for Summary Judgment should be granted and Plaintiff's claims should be dismissed as a matter of law.

## II.  ARGUMENT

### A. Summary Judgment Standard

The purpose of summary judgment is to "pierce the pleadings and to access the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine" issue exists where the

evidence is "sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." Douglas v. J.C. Penney Co., Inc., 422 F. Supp. 2d 260, 271 (D. Mass. 2006) (quoting Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995)). A "material" fact "has the potential to alter the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." Douglas, 422 F. Supp. 2d at 271 (quoting Smith v. F.W. Morse & Co., 76 F.3d 413, 428 (1st Cir.1996)).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. Douglas, 422 F. Supp. 2d at 272. This burden may be met by either submitting affirmative evidence that negates an essential element of the opponent's case or by demonstrating that proof of that element is unlikely to be forthcoming at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). The burden then "shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." Douglas, 422 F. Supp. 2d at 272 (quoting Sands v. Ridefilm Corp., 212 F.3d 657, 661 (1st Cir. 2000)). The law is clear that, Plaintiff, as the non-movant, must go beyond her pleadings and designate specific facts supported by evidence showing that there is a genuine issue for trial in order to defeat Defendants' motion for summary judgment. See Celotex Corp., 477 U.S. at 323. To meet this burden, Plaintiff cannot rely merely on "conclusory allegations, improbable inferences, and unsupported speculation." Douglas, 422 F. Supp. 2d at 272 (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)). The court must analyze this evidence by "view[ing] the facts in the light most favorable to the non-moving party, [and] drawing all reasonable inferences in that party's favor." Douglas, 422 F. Supp. 2d at 272 (quoting Pac. Ins. Co. v. Eaton Vance Mgmt., 369 F.3d 584, 588 (1st Cir. 2004) (quotation omitted)).

Where, as here, Plaintiff's allegations simply find no support in any of the evidence adduced during discovery, summary judgment should be granted in Defendants' favor. In support therefore Defendants show the following:

**B. Defendants Are Entitled to Summary Judgment on Counts II and III Which Allege Discrimination in Violation of the ADA and M.G.L. ch. 151B**

    **1. Plaintiff Has Presented No Direct Evidence of Discrimination**

It is undisputed that Boadi has no direct evidence of discrimination, *i.e.,* admissible evidence, which, if believed, would allow for a reasonable conclusion that but for her disability CHD would not have accepted her resignation in accordance with its job abandonment policy and she would not have been separated from CHD.[2] Thus, to defeat Defendants' motion, Boadi must satisfy the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).[3] Under this rubric, Boadi must first establish a *prima facie* case of discrimination. See Douglas, 422 F. Supp. 2d at 272. If she does, Defendants must then articulate a legitimate, non-discriminatory reason for Boadi's separation. Id. Once Defendants articulate said reason, the presumption of discrimination vanishes, and the ultimate burden rests with Boadi to show that the articulated reason is unworthy of credence, that it is "mere pretext" and that the "real reason" for separation was discrimination. Id. At that point, if Boadi cannot show said pretext, which she cannot, then her claim must fail.

---

[2] It is undisputed that Boadi has not alleged any direct evidence of discrimination. Indeed, direct evidence is "direct" and consists of a decision-maker's statements that directly reflect the alleged animus and bear squarely on the contested employment decision. Johansen v. NCR Comten, Inc., 30 Mass. App. Ct. 294, 300 (1991); Febres v. Challenger Caribbean Corp., 214 F.3d 57, 60 (1st Cir. 2000).

[3] Massachusetts, too, uses a burden-shifting analysis akin to federal law to determine whether any discrimination in violation of Chapter 151B has taken place. McKenzie v. Brigham & Women's Hosp., 405 Mass. 432 (Mass. 1989) (applying *McDonnell Douglas* framework to analysis of discrimination claim under Mass. Gen. Laws ch. 151B).

As the undisputed facts demonstrate, Boadi cannot meet this burden. Accordingly, Boadi's claims of discrimination fail and summary judgment is warranted.

### 2. **Plaintiff Cannot Establish a *Prima Facie* Case of Disability[4] Discrimination Under State or Federal Law**

To establish a *prima facie* case of disability discrimination, under the ADA and M.G.L. ch. 151B, Boadi must demonstrate that: (1) she is disabled within the meaning of the statutes; (2) she was qualified to perform the essential functions of her job with or without reasonable accommodation; and (3) she was subject to an adverse employment action because of her disability. See Furtado v. Std. Parking Corp., 820 F. Supp. 2d 261, 270 (D. Mass. 2011); Gauthier v. Sunbridge Healthcare Corp., 555 F. Supp. 2d 227, 239 (D. Mass. 2008); Castro-Medina v. Procter & Gamble Commercial Co., 565 F. Supp. 2d 343, 357 (D.P.R. 2008).

Boadi's claims of disability discrimination fail because Defendants had no knowledge of Boadi's purported disability. It is well-established, and a matter of common sense, that a plaintiff cannot prevail on a claim that she was discriminated against because of her disability by individuals who had no knowledge of her disability. See, e.g., Clark v. Lincare, Inc., 2005 WL1721213, at *22-23 (D. Mass. June 8, 2005); Echevarria v. Astrazeneca, LP, 133 F. Supp. 3d 372, 391 (D. P.R 2015); Bones v. Honey-well Int'l, Inc., 366 F.3d 869, 878 (10th Cir. 2004); Morisky v. Broward County, 80 F.3d 445, 448 (11th Cir. 1996) (finding plaintiff failed to establish a *prima facie* case under the ADA because plaintiff's "[v]ague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice"); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 932 (7th Cir. 1995) ("[A]n employer cannot be liable under the ADA for firing an employee when it indisputably has no knowledge of the disability . . . . At

---

[4]The Americans with Disabilities Act uses the term "disability" whereas the Massachusetts statute uses the term "handicap." There is little or no substantive difference between the two terms. See, e.g., Gillen v. Fallon Ambulance Service, Inc., 283 F.3d 11, 21, n.5 (1st Cir. 2002).

5

the most basic level, it is intuitively clear when viewing the ADA's language in a straightforward manner that an employer cannot fire an employee 'because of' a disability unless it knows of the disability. If it does not know of the disability, the employer is firing the employee 'because of' some other reason."); Clapp v. N. Cumberland Mem'l Hosp., 964 F. Supp. 503, 505 D. Me. 1997) ("[I]n order to find that an employer discriminated against an employee 'because of' the employee's disability under the ADA, the employer must be properly charged with knowledge or notice of the employee's disability."); Daly v. Abbot Laboratories, Inc., 2013 WL 5328898 at *3 (D. Mass. 2013).

On April 17, 2013, when Boadi did not show up for work or call out, her supervisor, Darlean Thomas ("Thomas") tried to contact her. (Facts ¶ 7) When Boadi did not return her call, Thomas called Boadi's son, James Takyi ("Takyi"). (Facts ¶ 7) Thomas and Takyi eventually spoke, at which time Takyi told Thomas that Boadi was at Mercy Hospital, but did not give her any further details. (Facts ¶ 7) Takyi also spoke with Pennington, Program Manager, and told her that Boadi was in the hospital, but refused to tell her at what hospital and would not give her any further details. (Facts ¶ 8)

Prior to April 22, 2013, Defendants had no knowledge that Boadi had been admitted to Pembroke Hospital, a psychiatric hospital. (Facts ¶ 21) Takyi admittedly did not tell anyone at CHD that Boadi was hospitalized at Pembroke Hospital or why she was hospitalization. (Facts ¶ 23) Boadi admittedly did not tell anyone at CHD that she was hospitalized or that she was diagnosed with major depression with psychotic features, delusional disorder, conversion disorder with seizures, and anxiety prior to her separation. (Facts ¶ 18) Further, prior to April 22, 2013, neither Trant nor Carol Fitzgerald ("Fitzgerald"), Vice President of Human Resources, the two individuals who made the decision to accept Boadi's resignation in

6

accordance with CHD's job abandonment policy, even knew that Boadi was in the hospital. (Facts ¶ 19)

Boadi believes that Defendants had knowledge that she was admitted to a psychiatric hospital because she submitted medical documentation dated April 25, 2013 to CHD, which, significantly, was *after* her employment with CHD ended on April 21, 2013. (Facts ¶ 22) Boadi provided medical documentation to Louise Ochrymowicz ("Ochrymowicz"), Human Resources Representative, in CHD's human resources department only after her employment ended in order to receive short-term disability benefits. (Facts ¶¶ 22, 24) Therefore, CHD accepting Boadi's resignation in accordance with its job abandonment policy could not have been motivated by any disability of which Defendants had no knowledge. The mere fact that Boadi was in the hospital at the time of her separation is insufficient to establish that her employment ended because of her purported disability.

In addition to Defendants having no actual knowledge of any purported disability, Boadi claims that prior to April of 2013, she had no history or record of such disability. (Facts ¶ 25) Further, Boadi does not put forth any evidence that suggests that anyone at CHD perceived Boadi to be disabled. To the contrary, no one at CHD said anything during or after her employment with CHD that could be construed as supporting any inference that anyone at CHD regarded Boadi to be disabled. (Facts ¶ 26) Further, Boadi testified that the only reason she believes that Defendants thought she was disabled is because she submitted medical documentation dated April 25, 2013 to CHD, *after* her employment with CHD ended. (Facts ¶ 24)

In addition, Boadi fails to establish a *prima facie* case under Massachusetts General Laws Chapter 151B because she cannot show that she is a qualified handicapped person within the

7

meaning of the statute. An employee "who engages in conduct significantly inimical to the interests of his employer and in violation of the employer's rules" renders himself unqualified within the meaning of M.G.L. ch. 151B and, therefore, is "not entitled to the protection of that statute." Garrity v. United Airlines, Inc., 421 Mass. 55, 63 (1995) (quoting Little v. FBI, 1 F.3d 255, 258-59 (4th Cir. 1993)); see also Furtado, 820 F. Supp. 2d at 270. As discussed below, Boadi repeatedly failed to show up to work on time and failed to comply with the Program's call-out policy. The Supreme Judicial Court in Garrity held that the Little court's interpretation of the Rehabilitation Act applied to Chapter 151B, and that its purpose is "to put individuals with disabilities on equal footing with nondisabled people in regards to the hiring, promotion, and discharge decisions of the [employer]. It is not designed to insulate them from disciplinary actions which would be taken against any employee regardless of his status." Garrity, 421 Mass. at 62-63; see also Furtado, 820 F. Supp. 2d at 271 (suffering from psychological disabilities does not give a plaintiff a "free pass" to violate company policies without consequences).

As Defendants did not have any knowledge of Boadi's purported disability, and Boadi otherwise cannot demonstrate that there is any genuine issue as to whether Defendants had such knowledge, Boadi cannot establish a *prima facie* case of disability discrimination under state or federal law. Further, as Boadi was not a qualified handicapped person within the meaning of Massachusetts law, she cannot establish a *prima facie* case under state law. As such, Defendants are entitled to summary judgment as a matter of law.

### 3. **Defendants Have Articulated a Legitimate, Non-Discriminatory Reason for Plaintiff's Separation**

Even if Boadi could establish a *prima facie* case, and she cannot, her claim fails because Defendants have articulated a legitimate, non-discriminatory reason for Boadi's separation; namely, CHD accepted her resignation in accordance with its job abandonment policy. Boadi

8

understood that, pursuant to the Program's call-out policy, she had to directly contact a supervisor if she was going to be late or absent. (Facts ¶ 6) As discussed above, on April 17, 2013, Boadi did not show up for work or call out. (Facts ¶ 7) When asked about Boadi's ability to communicate, Takyi told Pennington that Boadi was capable of communicating and that he spoke with her on the telephone almost every day. (Facts ¶ 8) Both Pennington and Thomas told Takyi that Boadi needed to contact them directly to discuss her absence. (Facts ¶¶ 7, 8) Boadi was scheduled to work on April 19, 20, and 21, 2013. (Facts ¶ 11) However, Boadi did not work any of these shifts and she did not contact her supervisor on April 19, 20, or 21, 2013 to notify her employer that she would not be at work. (Facts ¶ 11) In fact, Boadi did not contact anyone at CHD to discuss her absence prior to April 22, 2013. (Facts ¶ 12)

Pursuant to CHD policy, if an employee fails to report to work for three consecutive days without notifying her supervisor such employee is considered to have abandoned her job and voluntarily resigned. (Facts ¶ 13) On April 22, 2013, after Boadi failed to come to work and failed to contact her supervisor for three consecutive days, Trant consulted with Carol Fitzgerald ("Fitzgerald"), Vice President of Human Resources, about Boadi's absence. (Facts ¶ 15) Based on the information provided by Takyi that Boadi was able to communicate, and the fact that she had failed to contact her supervisor about her absence as required by the Program's call-out policy, Trant and Fitzgerald simply enforced CHD's job abandonment policy and, pursuant to that policy, accepted Boadi's voluntary resignation effective April 21, 2013. (Facts ¶¶ 15, 16) Notably, Pennington did not participate in the decision to enforce CHD's job abandonment policy. (Facts ¶ 15)

Significantly, Boadi was disciplined for the very conduct that resulted in her separation before April 22, 2013. (Facts ¶ 3) Boadi had a history of not showing up to work on time and

9

failing to comply with the Program's call-out policy. In fact, over the course of her employment, Boadi was repeatedly disciplined for attendance issues, including failing to comply with the Program's call-out policy. (Facts ¶ 3) Boadi was coached for improvement, verbally warned, and issued written warnings on at least nine (9) separate occasions related to her chronic tardiness, attendance, and failure to comply with the Program's call-out policy.[5] (Facts ¶ 3) Based on this history, on April 22, 2013, when Boadi failed to come to work and failed to directly contact her supervisor for three consecutive days, CHD had a good faith belief that Boadi was yet again failing to follow the Program's call-out policy.

Courts have repeatedly held that terminating an employee for violation of company policy, including attendance policies, is a legitimate, non-discriminatory reason for discharge. See Furtado, 820 F. Supp. 2d at 270 (summary judgment appropriate when employee terminated for violation of company cell phone policy); Benoit v. Technical Manufacturing Corp., 331 F.3d 166 (1st Cir. 2003) (summary judgment is appropriate when employee was terminated for time and attendance issues as well as failure to work cooperatively with his supervisor); Padin-Rivera v. A S Medical, Inc., 2011 WL 4435312 (D.P.R. 2011) (attendance issues were legitimate reasons for discharge and therefore summary judgment was appropriate).

Because Defendants have articulated a legitimate, non-discriminatory reason for Boadi's separation, the presumption of discrimination vanishes and the burden shifts to Boadi to show pretext.

---

[5] Boadi was also disciplined for issues including, but not limited to, failing to follow her supervisor's direction, conflicts with supervisors and co-workers, and a medication error. (Facts ¶ 4) Boadi's direct supervisor, Darlean Thomas ("Thomas"), described Boadi as "not a team player," "physically combative," and "argumentative." Thomas testified, for instance, that on one occasion, she had to write up Boadi after Boadi got into an argument and threw a remote control at a co-worker. (Facts ¶ 5)

### 4. **Plaintiff Has Failed to Present Any Evidence Indicating that Defendants' Legitimate, Non-Discriminatory Reason for Plaintiff's Separation Was Pretext for Discrimination**

Under the McDonnell Douglas framework, because Defendants have shown a legitimate, non-discriminatory reason for accepting her resignation in accordance with CHD's job abandonment policy, the ultimate burden rests with Boadi to show that the reasons provided by Defendants are mere pretext and the real reason for her separation was discrimination. See Douglas, 422 F. Supp. 2d at 271. Boadi "has to clear two significant hurdles before [s]he is able to show pretext." See Furtado v. Standard Parking Corp., 820 F. Supp. 2d at 272 (quoting Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 105 (1st Cir. 2005)). First, she must refute the evidence put forth by Defendants showing that it was her failure to follow policy, and not disability, that constituted the real reason for her separation. See id. Second, she must advance evidence of her own showing that Defendants' asserted reason was a pretext hiding discrimination. See id. Without such *actual* evidence, Boadi's claim of discrimination fails. See Hodgens v. General Dynamics Corp., 144 F.3d 151 (1st Cir. 1998) (employee's claim must fail when employee fails to submit evidence showing the employer's reasons for its employment decisions are pretextual). There is not a scintilla of evidence in the record suggesting that the reason for separation articulated by Defendants was pre-textual.

At the time CHD enforced its job abandonment policy, Defendants believed, based on Takyi's representation, that Boadi was capable of communicating and therefore capable of following the Program's call-out policy. (Facts ¶¶ 14, 15) It is undisputed that Takyi told Pennington that Boadi was capable of communicating and that he spoke with her almost every day. (Facts ¶ 8) In evaluating whether Defendants' stated reason for Boadi's separation was pretextual, the question is not whether Boadi actually had the capacity to make a telephone call

11

to her supervisor to tell her that she would not be at work, but whether Defendants believed she was capable of communicating and thus able to comply with the Program's call-out policy. See Feliciano de la Cruz v. El Conquistador Resort and Country Club, 218 F.3d 1, 7 (1st Cir. 2000); Goldstein v. Brigham and Women's Faulkner Hospital, Inc., 80 F. Supp. 3d 317, 327 (D. Mass. 2015). Even if Boadi can establish that she was physically incapable of communicating, and therefore unable to follow the policy, this is not evidence that CHD's reason for termination is a pretext hiding discrimination.

Boadi has put forth absolutely no evidence to refute the legitimate, non-discriminatory reason Defendants have articulated for her separation. All Boadi has offered as "evidence" to support her claim of disability discrimination is her speculation and subjective "belief" that her employment with CHD ended because of her purported disability. Despite the fact that Boadi and Takyi admittedly told no one at CHD about her purported disability prior to her separation, Boadi believes her employment ended because of her disability because she was in the hospital when her employment ended. (Facts ¶ 27) "It is . . . well settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason." Walker v. City of Holyoke, 523 F. Supp. 2d 86, 104 (D. Mass. 2007) (quoting Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996)); see also Mesnick v. Gen. Elec. Co., Inc., 950 F.2d 816, 824 (1st Cir. 1991) ("It is not enough for a plaintiff merely to impugn the veracity of the employer's justification; he must elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive."). Summary judgment is appropriate, "even in employment discrimination cases, 'where elusive concepts such as motive or intent are at issue'

12

. . . if the non-moving party 'rests merely upon conclusive allegations, improbable inferences, and unsupported speculation." Feliciano de la Cruz, 218 F.3d at 5.

Boadi also "believes" that her separation was simply not fair. (Facts ¶ 28) However, the court's inquiry is not whether CHD's business decision was fair or sound, but, rather, whether it masks discriminatory animus. See., e.g., Mesnick v. Gen. Elec. Co., Inc., 950 F.2d 816, 825 (1st Cir. 1991) ("Courts may not sit as super personnel departments, assessing the merits – or even the rationality – of employers' nondiscriminatory business decisions."); Feliciano de la Cruz, 218 F.3d at 8. Boadi may believe it is not fair that her employment ended when she was in the hospital, but that subjective belief is not proof sufficient to overcome Defendants' motion for summary judgment.

In addition, Boadi has put forth no evidence to show that she was treated less favorably than any "similarly situated" employee. In fact, Boadi has produced no evidence identifying any non-disabled employee who was treated more favorably than she. Boadi has not even alleged that any non-disabled employee was treated more favorably than she. (Facts ¶ 37)

Based upon the undisputed facts, it is clear that Boadi's separation had nothing to do with her purported disability. Instead, the evidence demonstrates that Defendants did not have knowledge of Boadi's purported disability. In addition, no evidence, aside from Boadi's speculation, suggests that Trant or Fitzgerald even knew that the absences for which they were enforcing CHD's job abandonment policy for were due to her purported disability, knew that she was in the hospital, or knew that she had requested any accommodation (i.e., requested medical leave). The record shows that Boadi had attendance issues for years, and had received numerous warnings related to same. Boadi's bare testimony, speculating that her employment ended because of her purported disability, does not suffice to create a genuine issue of material fact.

Because there is no evidence to support Boadi's wholly speculative state and federal disability discrimination claims, Counts I and II should be dismissed.

C. **Defendants are Entitled to Summary Judgment on Count I Which Alleges Violation(s) of the FMLA**

The Family and Medical Leave Act (FMLA) recognizes two types of claims: a claim for retaliation and a claim for interference with FMLA rights. See 29 U.S.C. § 2615(a); see also Furtado, 820 F. Supp. 2d at 279; O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349, 1352 (11th Cir. 2000). Although it is unclear whether Boadi is bringing a claim for retaliation or interference, for the reasons set forth below, Boadi cannot establish either.

1. *Boadi Cannot Establish a FMLA Retaliation Claim*

The McDonnell Douglas burden-shifting framework, as outlined above, also applies to FMLA retaliation claims. See Hodgens, 144 F.3d at 160. To establish a *prima facie* case of retaliation under the FMLA, and survive summary judgment, Boadi must show that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the adverse employment action and the protected activity. See id. at 161; Furtado, 820 F. Supp. 2d at 279-80.

Boadi cannot establish a *prima facie* case of retaliation because, as discussed above, Defendants had no knowledge that she engaged in protected activity. Just as Defendants had no knowledge of Boadi's purported disability, they had no knowledge of Boadi exercising her rights under the FMLA. As a matter of common sense, Boadi cannot prevail on a claim that Defendants retaliated against her because she exercised her FMLA rights if Defendants did not even have knowledge that Boadi exercised such rights.

As outlined in detail above, Defendants have otherwise articulated a legitimate, non-discriminatory reason for Boadi's separation; namely, CHD accepted Boadi's resignation in

accordance with its job abandonment policy. As discussed above, Boadi cannot present any evidence of pretext. Rather, all the facts indicate that Boadi's separation had nothing to do with the FMLA.

Boadi had a history of not showing up to work on time and failing to follow the Program's call-out policy. (Facts ¶ 3) Consequently, on numerous occasions she was coached for improvement, verbally warned, and issued written warnings. (Facts ¶ 3) Significantly, Boadi was disciplined for the very conduct that resulted in her separation <u>before</u> April 22, 2013. (Facts ¶ 3) Boadi's prior disciplinary action demonstrates that her separation had nothing to do with the FMLA. Boadi therefore fails to establish that her employment ended because she exercised her rights under the FMLA. <u>See</u> <u>Furtado</u>, 820 F. Supp. 2d at 280. As Boadi failed to come to work and failed to directly contact her supervisor for three consecutive days, CHD had a good faith belief that Boadi was yet again failing to follow the Program's call-out policy.

No evidence, aside from Boadi's speculation, suggests that Defendants harbored any animus toward her because she exercised her rights under the FMLA. Boadi has not alleged and there is no evidence in the record of negative comments, complaints, or expressions of reluctance by her supervisors or co-workers related in any way to FMLA leave. (Facts ¶ 35) In addition, Boadi fails to present any evidence identifying any employee who did not exercise her rights under the FMLA who was treated more favorably than she. <u>See</u> <u>Furtado</u>, 820 F. Supp. 2d at 280. In fact, Boadi does not even allege that any employee who did not exercise her rights under the FMLA was treated more favorably than she.

Further, Boadi's claim is belied by her admission that she previously took FMLA leave and returned to work without issue. In fact, the evidence demonstrates that CHD provided Boadi with a leave of absence on three separate occasions (in 2004, 2005, and 2008), two of which

15

involved a request for FMLA leave. (Facts ¶¶ 29, 31, 34) Each time Boadi returned to work after leave without suffering any adverse consequences. (Facts ¶¶ 30, 32, 33) According to Boadi, in 2004, CHD provided her with a leave of absence of approximately one month. (Facts ¶ 30) After this leave of absence, Boadi returned to work and CHD accommodated her with light duty work for approximately four months. (Facts ¶ 30) In December of 2004, Boadi requested FMLA leave and she continued to work at CHD after she requested this leave. (Facts ¶ 31) According to Boadi, in 2005, CHD provided her with a leave of absence of approximately two weeks. (Facts ¶ 32) After this leave of absence, Boadi returned to work. (Facts ¶ 32) According to Boadi, in 2008, CHD provided her with a leave of absence of approximately three weeks. (Facts ¶ 33) After this leave of absence, Boadi returned to work. (Facts ¶ 33) In October of 2008, Boadi requested FMLA leave, took approximately three weeks of FMLA leave, and returned to work at CHD after taking FMLA leave. (Facts ¶ 34)

The mere fact that Boadi was in the hospital at the time of her separation is insufficient to establish that Defendants retaliated against her for exercising her rights under the FMLA. Boadi's employment ended pursuant to CHD's job abandonment policy based on Boadi's repeated failure to follow policy, which had nothing to do with the FMLA. Instead, it had everything to do with the culmination of an ongoing attendance issue and failure to follow CHD policy, which is demonstrated by numerous disciplinary actions. Boadi cannot meet her burden to show that exercising her rights under the FMLA was a substantial or motivating factor in CHD's decision to enforce its policy. See Furtado, 820 F. Supp. 2d at 280. Therefore, summary judgment is warranted.

### 2. *Boadi Cannot Establish a FMLA Interference Claim*

To establish a claim of FMLA interference, and survive summary judgment, Boadi must

demonstrate that: (1) she was an eligible employee under the FMLA; (2) CHD is a covered employer under the FMLA; (3) she gave CHD adequate notice of her intention to take leave; (4) for a covered reason; and (5) CHD denied her FMLA benefits to which she was entitled, such as by not returning her to an equivalent position at the end of the leave. See Furtado, 820 F. Supp. 2d at 280; Bones, 366 F.3d at 877-78.

Boadi claims that Defendants interfered with her FMLA right to take medical leave by terminating her employment. However, "[i]f termination would have occurred regardless of the request for FMLA, an employee may be terminated even if termination prevents him from exercising his rights under the FMLA." See Furtado, 820 F. Supp. 2d at 280 ("A reason for dismissal that is unrelated to a request for an FMLA leave will not support recovery under an interference theory.") (quoting Bones, 366 F.3d at 877)).

Boadi's interference claim fails because her employment would have ended regardless of her exercising her rights under the FMLA. Like Boadi, the plaintiff in Bones v. Honeywell Int'l, Inc., was notified that her employer deemed her to have voluntarily terminated her employment because she neither reported to work nor notified her supervisor of her absences for three consecutive days in violation of company policy. See Bones, 366 F.3d at 872. (Facts ¶ 16) Bones' boyfriend delivered a request for a medical leave of absence to Honeywell's medical department. Bones, 366 F.3d at 874. Similarly, Boadi's son Takyi contacted Ochrymowicz in CHD's human resources department related to short-term disability benefits. (Facts ¶ 10) Like Ochrymowicz, no one from the medical department at Honeywell participated in the decision to end Bones' employment. See Bones, 366 F.3d at 874. (Facts ¶ 15) Instead, the decision to end Bones' employment was made by her supervisor and the Human Resources Manager. Bones, 366 F.3d at 874. Similarly, Trant and Fitzgerald enforced CHD's job abandonment policy.

17

(Facts ¶ 15)

Trant and Fitzgerald, like Bones' supervisor and the Human Resources manager, testified that Boadi's employment ended because she did not show up for three consecutive days and did not notify her supervisor of those absences, in violation of company policy. See Bones, 366 F.3d at 874. (Facts ¶ 15) Boadi proffers no evidence, aside from her own speculations, that contradicts Trant's and Fitzgerald's testimony. The record shows that Boadi had a history of tardiness and non-compliance with the Program's call-out policy. (Facts ¶ 3) Boadi had previously been given warnings for her attendance, including failing to comply with the Program's call-out policy. (Facts ¶ 3) It is undisputed that Boadi did not comply with the Program's call-out policy on April 19, 20, and 21, 2013. (Facts ¶¶ 11, 12) In fact, Boadi admits that she never contacted her supervisor on those dates or prior to her separation. (Facts ¶ 11) Finally, at the time of the decision to enforce CHD's job abandonment policy, Trant and Fitzgerald, like Bones' supervisor and the Human Resources manager, had no knowledge of Boadi's request for a medical leave of absence. See Bones, 366 F.3d at 874. (Facts ¶ 17)

Boadi's employment, like Bones', ended because she did not comply with the Program's call-out policy. Boadi's employment would have ended irrespective of whether or not these absences were related to a requested medical leave. Based on these reasons, the court in Bones v. Honeywell Int'l, Inc., upheld the district court's decision granting summary judgment to Honeywell. Similarly, this Court should grant summary judgment to Defendants.

### 3. *Defendant Candy Pennington is Not Individually Liable Under the FMLA*

Finally, Pennington is not individually liable for the alleged violations of the FMLA. Personal liability under the FMLA depends on whether the individual qualifies as an "employer" under Section 2611(4)(A)(ii)(I). See Noia v. Orthopedic Associates of Long Island, 93 F. Supp.

3d 13, 16 (E.D.N.Y. 2015). In determining individual liability under the FMLA, courts have applied the "economic reality" test adapted from the Fair Labor Standards Act context. See Brunelle v. Cytec Plastics, Inc., 225 F. Supp. 2d 67, 82 (D. Me. 2002); Graziadio v. Culinary Institute of America, 817 F.3d 415 (2d Cir. 2016). Under the "economic reality" test, courts look to whether the individually named defendant controlled in whole or in part plaintiff's rights under the FMLA. See Noia, 93 F. Supp. 3d at 17; Smith v. Westchester Cty., 769 F. Supp. 2d 448, 475 (S.D.N.Y. 2011); Freemon v. Foley, 911 F. Supp. 326, 330 (N.D. Ill. 1995). It is insufficient that an individual has supervisory authority over the plaintiff. She must also exercise an adequate amount of control over the plaintiff's ability to exercise her FMLA rights. See Adams v. Shipman, 2014 WL 4924299, at *9 (M.D.N.C. Sept. 30, 2014); Noia, 93 F. Supp. 3d at 17; Benton v. Belk, 2012 WL 5381209, at *3 (D.S.C. 2012); Brewer v. Jefferson-Pilot Standard Life Ins. Co., 333 F. Supp. 2d 433, 437 (M.D.N.C. 2004).

Here, Pennington had no control over determining whether Boadi was eligible for leave under the FMLA. Her job responsibilities do not include determining whether an employee may take FMLA leave. (Facts ¶ 36) Instead, CHD's Human Resources department is solely responsible for handling all aspects of an employee's FMLA leave. Notably, Pennington did not even speak with anyone in Human Resources about Boadi's separation prior to April 22, 2013. Additionally, there is no evidence to suggest that Pennington participated in the decision to accept Boadi's resignation. Rather, her involvement in Boadi's separation was limited to reporting Boadi's absence and failure to follow Program call-out policy and procedures to Trant. (Facts ¶¶ 14, 15) As Pennington had no control over Boadi's ability to exercise her FMLA rights, Pennington does not qualify as an "employer" under the FMLA and cannot be held individually for the alleged FMLA violations. As such, Boadi's FMLA claim against

19

Pennington should be dismissed.

## III. CONCLUSION

Defendants are entitled to summary judgment because the undisputed facts demonstrate that Boadi cannot establish a *prima facie* case of discrimination or violation(s) of the FMLA. In addition, Boadi's employment ended for legitimate, non-discriminatory reasons; namely, she had a history of not showing up to work on time and failing to comply with the Program's call-out policy. And Boadi has not put forth any evidence that would support a reasonable belief that the legitimate reasons Defendants articulated are not truly the reasons for her separation. Consequently, Boadi has not met her burden on pretext under the McDonnell Douglas paradigm and her claims of discrimination and violation of the FMLA must fail; thus, summary judgment is warranted.

For all of the foregoing reasons, Defendants respectfully request that the Court grant Summary Judgment in its favor on Counts I-III of the Complaint filed by Plaintiff.

Respectfully Submitted,

/s/ Karina L. Schrengohst, Esq.
Karina L. Schrengohst, Esq.
BBO #681614
Counsel for Defendants
Royal, P.C.
270 Pleasant Street
Northampton, Massachusetts 01060
Tel. (413) 586-2288/Fax (413) 586-2281

Dated: July 22, 2016 E-mail: KSchrengohst@TheRoyalLawFirm.com

### CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing *Defendants' Memorandum of Law in Support of Motion for Summary Judgment* was served upon the attorney of record for each other party via the Court's CM/ECF Electronic Case Filing System on July 22, 2016.

/s/ Karina L. Schrengohst, Esq.
Karina L. Schrengohst, Esq.