UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| GRACE BOADI | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 3:14-cv-30162-KAR |
| CENTER FOR HUMAN | ) | |
| DEVELOPMENT, INCORPORATED | ) | |
| and CANDY PENNINGTON | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTION FOR RULE 35(a) PSYCHOLOGICAL EXAMINATION
(Dkt. No. 74)

ROBERTSON, U.S.M.J.

I. INTRODUCTION

Before the court is the motion of the defendants, Center for Human Development, Incorporated ("CHD"), and Candy Pennington (collectively, "Defendants"), to compel a psychological examination of the plaintiff, Grace Boadi ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 35(a) (Dkt. No. 74) ("Defendants' Rule 35 Motion"). Plaintiff opposes the motion (Dkt. No. 76). For the reasons set forth below, Defendants' Rule 35 Motion is DENIED.

II. BACKGROUND

Plaintiff's sole remaining claim in this case is that Defendants interfered with her rights under the Family Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA") by terminating her employment in or around April 2013.[1] Insofar as relevant to this motion, the facts may be briefly

---

[1] As filed, Plaintiff's complaint included claims of discrimination on the basis of disability under the Americans with Disabilities Act, 42 U.S.C. § 12112, et seq. and Massachusetts General Laws ch. 151B (Dkt. No. 1). On summary judgment, the court ruled that the disability discrimination

summarized follows.[2]  In April 2013, Plaintiff was admitted to Pembroke Hospital, where she was diagnosed with major depression with psychotic features, delusional disorder, conversion disorder with seizures, and anxiety.  She remained hospitalized for ten days.  During his mother's hospitalization, Plaintiff's son informed CHD that Plaintiff was hospitalized and could not work her scheduled shifts.  Plaintiff submitted relevant medical information to CHD in accordance with CHD's instructions.  On or around April 26, 2013, following Plaintiff's release from the hospital, she provided CHD with a Certificate to Return to Work or School, signed by her health care provider, indicating that she could return to "full duty" on May 24, 2013.  Plaintiff's employment was purportedly terminated pursuant to CHD's job abandonment policy because she failed personally to communicate her absences to her supervisor.

Plaintiff has retained Frederick S. Kadushin, Ph.D., ABN as an expert.  Dr. Kadushin conducted two in-person clinical examinations of Plaintiff and certain neurological tests.  In addition to examining Plaintiff, Dr. Kadushin also interviewed Plaintiff's son and reviewed Plaintiff's medical records, interrogatories, depositions, and other materials relevant to this case (Dkt. No. 76-1 at 2-3).  On the basis of his interviews with Plaintiff, record review, and other information, Dr. Kadushin is prepared to opine on the following question:

> Was Ms. Boadi capable of understanding and following CHD company policies and procedures at any time during her hospital stay in April 2013?

(*Id.* at 2).

---

claims, which remained pending when the defendants filed this motion, failed as a matter of law (Dkt. No. 84).  Defendants' Rule 35 Motion was premised primarily, if not entirely, on the disability discrimination claims.  They had a much stronger argument for a Rule 35 examination of Plaintiff when those claims were pending because Plaintiff intended to offer expert testimony on the question of whether she was capable of performing the essential functions of her job (Dkt. No. 76-1 at 23).

[2] The facts stated are drawn from the Plaintiff's complaint (Dkt. No. 1), the court's Memorandum of Decision and Order on Defendants' Motion for Summary Judgment (Dkt. No. 57), and Plaintiff's opposition to Defendants' Rule 35 Motion (Dkt. No. 76).

Defendants' motion to compel a psychological examination of Plaintiff is premised on the ground that Plaintiff has placed her mental condition in controversy. Defendants have retained the services of Dr. Albert M. Drukteinis to perform cognitive capacity screening and psychological tests that were not performed by Dr. Kadushin as a basis for an opinion on Plaintiff's ability to perform the essential functions of her job in April and May 2013 and thereafter (Dkt. No. 75).

III. LEGAL STANDARD

Federal Rule of Civil Procedure 35(a) provides, in pertinent part, that a court may order "a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner . . . on motion for good cause." A party seeking to compel a Rule 35 examination must show that: (1) the party to be examined has placed his or her mental condition "in controversy;" and (2) the party seeking the examination has done so in good faith.[3] *Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964). *Schlagenhauf* requires an affirmative showing by the moving party that the plaintiff's condition is genuinely in controversy and that good cause exists for ordering the specific examination being requested. *Id.* at 119, 121.

In addition to the *Schlagenhauf* requirements, courts have identified the following five factors that may warrant an order requiring a Rule 35 psychological examination:

> (1) a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of a specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) plaintiff's offer of expert witness testimony to support a claim of emotional distress; and/or (5) plaintiff's concession that his or her mental condition is "in controversy."

---

[3] Defendants' good faith in seeking the examination is not in question.

*Flores-Febus v. MVM, Inc.*, 299 F.R.D. 338, 340 (D.P.R. 2014) (citing *Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D. Cal. 1995) (compiling cases)). Defendants' Rule 35 Motion fails at the first stage of inquiry because Plaintiff has not placed her mental condition "in controversy" by claiming that Defendants interfered with her FMLA rights.

IV. ANALYSIS

A. Plaintiff's Mental Condition is not in Controversy

A compelled Rule 35(a) mental status examination is intrusive and should not be ordered as a matter of course. A so-called "garden variety" claim of emotional distress, for example, does not justify an order requiring a Rule 35(a) examination. *See, e.g., Flanagan v. Keller Prods., Inc.*, No. 00-542-M, 2001 WL 1669379, at *2 (D.N.H. 2001) ("Because plaintiff's case involves a standard claim for mental anguish . . . defendant has not met its burden of affirmatively establishing that plaintiff's mental condition is in controversy."). Defendants claim that they are entitled to present expert testimony from Albert M. Drukteinis, Ph.D., on the issue of whether Plaintiff could perform the essential functions of her job in April and May 2013 and thereafter, and that Dr. Drukteinis should be permitted to conduct a mental examination of Plaintiff in support of an opinion on this issue. Defendants rely on *Franzen v. Ellis Corp.*, 543 F.3d 420 (7th Cir. 2008), and *Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325 (1st Cir. 2005) (Dkt. No. 98 at 8) in support of this argument. For the following reasons, the court disagrees with Defendants' contentions.

As a general matter, the FMLA entitles an eligible employee to, *inter alia*, a total of 12 work weeks of leave, and to return to the same or a substantially similar position at the conclusion of any FMLA-qualified leave. *See Colburn*, 429 F.3d at 330.

> Claims for violations of substantive [FMLA] rights are brought under 29 U.S.C. § 2615(a)(1), which prohibits actions by 'any employer to interfere with, restrain, or

> deny the exercise of' such rights." *See, e.g., Harrell v. U.S. Postal Serv.*, 415 F.3d 700, 706-07 (7th Cir. 2005); *see also* 7 N. Lareau et al., *Labor and Employment Law* § 174.02[3] (2003). To meet his or her burden in an interference with substantive rights claim, a plaintiff need only show, by a preponderance of the evidence, entitlement to the disputed leave; no showing as to employer intent is required. *See Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960-61 (10th Cir. 2002); *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999).

*Id.* at 331. The parties agree that Plaintiff's only remaining claim in this case is an FMLA "interference" claim.

In *Colburn*, the appeals court affirmed that Plaintiff was not entitled to any remedy on his interference claim "because he admitted he could not return to work at the expiration of the leave." *Id.* at 334. Similarly, in *Franzen*, the appeals court affirmed the trial court's conclusion that the plaintiff had not shown that he was entitled to any damages because the evidence established that the plaintiff "was unable to return to work at the end of the 12-week FMLA period." *Franzen*, 543 F.3d at 426. Because there was no genuine dispute that the plaintiff "was either unwilling or unable to return to work at the expiration of his FMLA leave, [his employer] lawfully could have terminated his employment, and he would not be entitled to damages resulting from his termination." *Id.* at 426.

In the present case, in contrast to the situations in the *Colburn* and *Franzen* cases, Plaintiff tendered a fitness-for duty certification from her health care provider stating that she could return to "full duty" on May 25, 2013, prior to the expiration of the 12-week FMLA leave period. There is substantial other evidence indicating that she intended to return to work before her entitlement to FMLA leave expired. As long as the employer has a uniform policy, it may require all similarly situated employees to obtain and present certification from the employee's

health care provider that the employee is fit to resume work. *See* 29 C.F.R. § 825.312.[4] But, "[n]o second or third opinion on a fitness-for-duty certification may be required." *Id.* Under the applicable regulations, had CHD not terminated Plaintiff's employment, it would have been required to accept Plaintiff's care provider's representation that she was fit to return to work and could not have required an independent examination on the question of her fitness for duty. Thus, in the present case, the question is not whether Plaintiff could perform the essential functions of her job. Rather, the liability issues are whether Plaintiff was capable during her hospitalization of complying with CHD's policy requiring that she personally notify her employer of her absence due to illness, and whether Plaintiff's son provided sufficient information to CHD such that CHD was on notice that plaintiff was suffering from a serious health condition entitling her to FMLA leave and protection. Furthermore, under the FMLA, Plaintiff cannot recover damages for emotional distress allegedly caused by the termination of her employment. *See Pagan-Colon v. Walgreens of San Patricio, Inc.*, 697 F.3d 1, 16 (1st Cir. 2012) (citing *Nv. Dept. of Human Res. v. Hibbs*, 538 U.S. 721, 739-40 (2003)).

Turning to the factors set forth in *Flores-Febus* and other cases, Plaintiff has not asserted a claim for negligent or intentional infliction of emotional distress; is not required to prove a specific mental or psychiatric disorder in order to recover; is barred from asserting unusually severe emotional distress as a basis for an award of damages; and will not offer expert testimony to support a claim of emotional distress. *See Flores-Febus*, 299 F.R.D. at 340. Plaintiff's mental health status in April 2013 is a live issue because a factfinder will be required to decide whether

---

[4] If an employer meets certain criteria, it may require an employee's health care provider to address whether the employee can perform the essential functions of his or her job. *See* 29 C.F.R. § 825.312(b). The defendants have not represented that CHD satisfied those criteria in Plaintiff's case. In any event, CHD terminated Plaintiff's employment rather than addressing her fitness to return to work.

Plaintiff was capable of complying with CHD's call-in policy while she was hospitalized in April 2013. On this point, Defendants' expert has access to Plaintiff's medical records from that period as part of the discovery. The court is not persuaded that personal examination and testing conducted four years after the fact would provide a basis for a reliable expert opinion concerning Plaintiff's mental health impairments and capacities in April 2013. In any event, such an opinion would not be significantly more reliable than an opinion based on a review of Plaintiff's medical records from the relevant time. In these circumstances, the court concludes that a Rule 35 examination is not warranted.

V. CONCLUSION

For the foregoing reasons, the Defendants' Rule 35 Motion is DENIED. It is so ordered.

Dated: May 31, 2017               /s/ Katherine A. Robertson
                                  KATHERINE A. ROBERTSON
                                  U.S. MAGISTRATE JUDGE