UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GRACE BOADI, | ) | |
|       Plaintiff | ) | |
| v. | ) | Civil Case No. 14-cv-30162-KAR |
| | ) | |
| CENTER FOR HUMAN | ) | |
| DEVELOPMENT, INC. AND | ) | |
| CANDY PENNINGTON | ) | |
|       Defendants | ) | |

MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION FOR
ATTORNEYS' FEES AND COSTS
(Dkt. No. 134)

I.    INTRODUCTION

Now before the court is Plaintiff Grace Boadi's ("Plaintiff") motion for attorneys' fees and

costs filed in accordance with 29 U.S.C. § 2617(a)(3). Plaintiff's motion follows a jury's finding

that Plaintiff's former employer, the Center for Human Development ("CHD"), and her former

supervisor, Candy Pennington (collectively "Defendants"), were liable for interfering with

Plaintiff's rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654.

The parties have consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); Fed. R.

Civ. P. 73. Plaintiff requests attorneys' fees and costs of $225,405.99. Defendants have opposed

the motion and Plaintiff has responded to Defendants' opposition. For the reasons that follow,

the court awards Plaintiff $196,293 in attorneys' fees and $16,137.99 in costs for a total of

$212,430.99.

II.    BACKGROUND

The following summary of the facts and procedural history is provided as background for

the determination of a reasonable fee award.

This case arose out of a series of events that culminated in Defendants terminating

Plaintiff's employment on April 21, 2013 while she was hospitalized. During the seven day

period beginning on Sunday, April 14, 2013, Plaintiff was scheduled to work from Wednesday, April 17, through Sunday, April 21, 2013. She was hospitalized due to the sudden onset of a mental impairment from April 15 through April 24, 2013. On five occasions during Plaintiff's hospitalization, Plaintiff's son, James Takyi, notified Pennington and other CHD personnel that Plaintiff was very sick, was in the hospital, and was not able to work. Notwithstanding these notices, CHD terminated Plaintiff's employment as of April 21, 2013 due to her failure to personally notify CHD of her absences from work as its call-in policy required. CHD maintained its position that Plaintiff had abandoned her job and voluntarily resigned and denied Plaintiff FMLA leave after she presented Defendants with proof of her hospitalization and her physician's certification that she would be able to return to her full duties in a month.

On September 5, 2014, Plaintiff sued CHD and Pennington for interfering with her rights under the FMLA and for violating the Americans with Disabilities Act ("ADA") and the Massachusetts anti-discrimination statute, Mass. Gen. Laws ch. 151B ("Chapter 151B") (Dkt. No. 1). [1] On March 6, 2017, the court granted summary judgment in Defendants' favor as to the ADA and Chapter 151B claims and denied it as to Plaintiff's FMLA interference claim (Dkt. No. 84). *See Boadi v. Ctr. for Human Dev., Inc.*, 239 F. Supp. 3d 333, 355 (Mass. 2017). Thereafter, Defendants moved for a psychological examination of Plaintiff pursuant to Fed. R. Civ. P. 35, Plaintiff contested the motion, and the court denied it on May 31, 2017 (Dkt. Nos. 74, 76, 100).

The case was referred for alternative dispute resolution ("ADR") on April 3, 2017 and an ADR hearing was scheduled for April 13, 2017 (Dkt. Nos. 90, 91). Counsel complied with the court's order to provide mediation memoranda (Dkt. No. 95; Dkt. No. 134-1 at 23). On April 12,

---

[1] Plaintiff also sued another of her former supervisors, Jeffrey Trant, but later stipulated to his dismissal (Dkt. No. 56).

2017, Plaintiff's counsel notified the court that Plaintiff no longer wished to engage in mediation, and the ADR hearing, which was scheduled for the next day, was cancelled (Dkt. No. 95).

The jury trial commenced on June 19, 2017 (Dkt. No. 117). Plaintiff's case included the testimony of an expert, Dr. Frederick Kadushin, who opined that Plaintiff was not capable of following CHD's call-in policies and procedures while she was hospitalized. On June 23, 2017, the jury found that Plaintiff had a "serious health condition" as defined by the FMLA, that she or her spokesperson provided adequate notice of her need for FMLA leave, and that Defendants were liable for interfering with her FMLA rights (Dkt. No. 129). The jury awarded Plaintiff $112,592.34 for lost wages and $29,448.90 for lost benefits from April 21, 2013 through the date of the verdict, for a total of $142,041.24 plus interest (*id.*). On September 21, 2017, the court awarded Plaintiff liquidated damages in an amount equal to lost wages and benefits, $142,041.24, plus interest (Dkt. No. 144). *See* 29 U.S.C. § 2617(a)(1)(A)(iii).

III.    ANALYSIS

"The court in . . . an [FMLA] action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." 29 U.S.C. § 2617(a)(3). Plaintiff seeks $209,268 in fees for the work of two attorneys, Dawn D. McDonald and Shawn M. Willis, and a paralegal. Attorney McDonald's itemized billing statement charges $300 per hour, while Attorney Willis charges $275, and the paralegal charges $150 (Dkt. No. 134-1 at 36). Plaintiff seeks $180,780 for 602.60 hours of work Attorney McDonald performed beginning on March 20, 2015 when she took over the case from Attorney Willis (*id.* at 6). Attorney Willis' fees are $19,635 for 71.40 hours of work and the paralegal's fees are $8,853 for 59.02 hours (*id.* at 36). Plaintiff also seeks

$16,137.99 in expert witness fees and costs.  Defendants oppose Plaintiff's motion on various grounds.

    A.    <u>Attorneys' Fees</u>

        1.    Legal Standard

"Attorneys' fees are calculated by determining a 'lodestar amount' and then, if necessary, adjusting that amount to ensure that the fee amount is reasonable."  *Cheng v. Romo*, Civil Action No. 11-10007-DJC, 2014 WL 882796, at *1 (D. Mass. Mar. 6, 2014) (citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564–65 (1986)).  "Federal courts in this circuit customarily use the lodestar approach to determine fee amounts."  *Id.* (citing *Burke v. MacDonald,* 572 F.3d 51, 56 n.5 (1st Cir. 2009)).  In calculating this lodestar amount, the judge "applies prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved)" to the time counsel spent on the case, reduced by "duplicative, unproductive, or excessive hours."  *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir. 2001).  *See Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983); *Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir. 1992).  In making this calculation, "'the presiding judge must "draw[] on [her] own experience and wisdom [in] deciding whether the time spent on each phase was in excess of a reasonable amount."'"  *Alfonso v. Aufiero*, 66 F. Supp. 2d 183, 192 (D. Mass. 1999) (quoting *United States v. Metro. Dist. Comm'n*, 847 F.2d 12, 18 (1st Cir. 1988)) (alterations in original).

"The party seeking an award of attorneys' fees bears the burden of establishing and documenting the hours expended and the hourly rates charged."  *Cheng*, 2014 WL 882796, at *1 (citing *Torres–Rivera v. O'Neill–Cancel,* 524 F.3d 331, 340 (1st Cir. 2008)).  Plaintiff's lead counsel, Attorney Dawn D. McDonald, submitted thirty-four pages of invoices, which

appropriately itemized the amount of time each member of her law firm spent on specific tasks (134-1 at 2-36). Counsel did not use disfavored "block billing" as Defendants allege (Dkt. No. 136 at 5-6). *See E.E.O.C. v. AutoZone, Inc.*, 934 F. Supp. 2d 342, 354 (D. Mass. 2013) ("'Block billing' is an industry term used to describe 'the time keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks'") (quoting *Conservation Law Found., Inc. v. Patrick*, 767 F. Supp. 2d 244, 253 (D. Mass. 2011)). Consequently, the court refuses Defendants' request to reduce Plaintiff's fee award based upon block billing.

2.      Calculation of Reasonable Hourly Rates

With the exception of time spent on clerical tasks on two occasions, Defendants do not quibble with Plaintiff's attorneys' hourly billing rates (Dkt. No. 136). Attorney McDonald submitted affidavits from three Springfield litigators to support her $300 hourly rate (Dkt. No. 134-3, 134-4, 134-5). *See Rosie D. ex rel. John D. v. Patrick*, 593 F. Supp. 2d 325, 329 (D. Mass. 2009) ("In connection with the appropriate hourly rate, the First Circuit requires that affidavits be submitted attesting to the reasonableness of the rates by knowledgeable attorneys unconnected to the underlying litigation.").

Defendants object to the following time expended on clerical tasks being billed at the attorneys' hourly rates: one hour Attorney Willis spent on September 5, 2014 filing the complaint and discussing the issuance of summonses with the court clerk; and .10 hour Attorney McDonald spent on June 12, 2017 reading a message from the court clerk and submitting a missing page from Plaintiff's proposed voir dire questions (Dkt. No. 134-1 at 5, 28; Dkt. No. 136 at 6). The attorneys' hourly rates will be reduced by 50% for these tasks because "[t]ime spent on 'clerical or secretarial tasks . . . ought not to be billed at lawyers' rates, even if a lawyer

performs them.'" *Rogers v. Cofield*, 935 F. Supp. 2d 351, 364 (D. Mass. 2013) (quoting *McMillan v. Mass. Soc'y for Prevention of Cruelty to Animals*, 140 F.3d 288, 308 (1st Cir. 1998)). These reduced rates approximate the paralegal's hourly rate of $150, "which is commensurate with the nature of the tasks" (Dkt. No. 134-1 at 36). *Mass. Dep't of Pub. Health v. Sch. Comm. of Tewksbury,* 841 F. Supp. 449, 460 (D. Mass. 1993). *See McMillan*, 140 F.3d at 308; *Lipsett*, 975 F.2d at 940. Accordingly, Attorney Willis' requested fees will be reduced by $137.50 and Attorney McDonald's will be reduced by $15.00.

      3.     Calculation of Hours Reasonably Expended

Defendants allege that the total hours expended by Plaintiff's legal team should be reduced based on: (1) the failure of Plaintiff's ADA and Chapter 151B claims; (2) the fact that the administrative proceeding before the MCAD was not required to bring suit for the FMLA claim that ultimately succeeded; (3) the cancellation of the ADR hearing by Plaintiff; and (4) the specific entries in the billing records for time that was allegedly unproductive, excessive, unnecessary, or duplicative. Each of Defendants' challenges will be discussed in turn.

      a.     Because Plaintiff's claims were based on a common set of facts, a reduction for the time spent on the unsuccessful claims is not warranted.

Defendants' argument supporting reduction of the number of hours reasonably expended is based on Plaintiff's failure to prevail on the ADA and Chapter 151B claims. In cases in which a plaintiff does not prevail on all claims, such as this, courts address two questions when analyzing attorneys' fee requests. *See Hensley*, 461 U.S. at 434. "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.* In light of the common core of facts underlying all claims and the substantial relief obtained by Plaintiff, a reduction based on partial success is not appropriate.

The first question is answered "no" because Plaintiff's "claims for relief . . . involve[d] a common core of facts or related legal theories." *Id.* at 435. "All the claims arose from the same series of events, and were so closely related that it would be difficult, if not impossible, to separate work done on the successful claims from work done for the unsuccessful ones." *Ciolino v. Eastman*, Civil Action No. 13-13300-ADB, 2016 WL 6246757, at *4 (D. Mass. Oct. 25, 2016). Plaintiff's successful FMLA claim and the unsuccessful ADA and Chapter 151B discrimination claims were supported by the same core facts: Defendants terminated Plaintiff's employment while she was hospitalized due to a mental impairment and refused to reconsider their decision after she was released from the hospital and presented a physician's certification that she could assume her full-time duties in a month. *See Boadi*, 239 F. Supp. 3d at 344-54. Although Defendants received sufficient notice of Plaintiff's hospitalization for purposes of the FMLA, their lack of knowledge that Plaintiff suffered from a disability or handicap, as those terms are defined by the statutes, warranted granting summary judgment on the discrimination claims. *Id.* at 351-52. *Contrast Quint v. A.E. Staley Mfg. Co.*, 245 F. Supp. 2d 162, 179 (D. Me.), *aff'd,* 84 F. App'x 101 (1st Cir. 2003) (reducing fee request for time and costs expended on "[p]laintiff's unsuccessful sexual harassment and common law tort claims [that were] unrelated to her successful ADA, FMLA and MHRA claims because they rest on facts and theories distinct from the successful disability-based claims.").

*Hensley's* second question is answered in the affirmative. *See Hensley*, 461 U.S. at 434. Because Plaintiff "obtained excellent results, [her] attorney should recover a fully compensatory fee." *Id.* at 435. The jury found CHD and Pennington liable for violating the FMLA and awarded Plaintiff back pay and lost benefits of $142,041.24 (Dkt. No. 129). In addition, the court awarded an equal amount in liquidated damages (Dkt. No. 144). *See* 29 U.S.C. §

2617(a)(1)(A)(iii) (liquidated damages are awarded under the FMLA unless the employer proves "that the act or omission . . . was in good faith and that the employer had reasonable grounds for believing that the act or omission was not in violation of [the FMLA . . . . ."). Plaintiff's award, which totaled $284,082.48 plus interest, would not have been significantly different if she also had prevailed on the ADA and Chapter 151B claims because she could not recover duplicative back pay and benefit awards (Dkt. Nos. 129, 144). *See Acevedo-Garcia v. Monroig*, 351 F.3d 547, 567 (1st Cir. 2003) ("It is well-settled that double awards for the same injury are impermissible."); *Baier v. Rohr-Mont Motors, Inc.*, 175 F. Supp. 3d 1000, 1011 (N.D. Ill. 2016) (double recovery for lost wages and benefits for violations of the ADA and FMLA is not permitted); *see also* 42 U.S.C. § 1981a (capping compensatory and punitive damages for intentional employment discrimination).

      b.    Hours should be reduced for time expended on the administrative hearing before the MCAD.

Defendants persuasively contend that the fee award should be reduced for the time Plaintiff's first attorney expended on the Massachusetts Commission Against Discrimination ("MCAD") proceedings (Dkt. No. 136 at 2-3). "[I]t is well-settled that an employee alleging discrimination must file an administrative claim with the E.E.O.C. or with [the] parallel state agency [the MCAD] before a civil action may be brought." *Thornton v. UPS, Inc.,* 587 F.3d 27, 31 (1st Cir. 2009) (citing *Bonilla v. Muebles J.J. Alvarez, Inc.,* 194 F.3d 275, 277 (1st Cir. 1999)). *See Lattimore v. Polaroid Corp.,* 99 F.3d 456, 464 (1st Cir. 1996) ("Chapter 151B require[s] an employee to file an administrative charge as a prerequisite to commencing a civil action for employment discrimination.") (citing Mass. Gen. Laws ch. 151B, §§ 5–9). However, there is no similar requirement for bringing an FMLA claim in federal court. *See Churchill v. Star Enters.*, No. CIV. A. 97-3527, 1998 WL 254080, at *6 (E.D. Pa. Apr. 17, 1998) ("The

FMLA does not require a plaintiff to pursue any administrative remedies before filing suit in federal court.").

The FMLA's fee provision limits the award of attorneys' fees, reasonable expert witness fees, and costs to an FMLA "action." *See* 29 U.S.C. § 2617(a)(2), (3). In similar fee statutes, the term "action," when used alone, has been interpreted to mean a court proceeding, but excludes an administrative proceeding. *See N.Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 61 (1980) (use of the word "action" in 42 U.S.C. § 2000a-3(b) means solely "court action," but "Congress' use of the broadly inclusive disjunctive phrase 'action or proceeding' [in 42 U.S.C. § 2000e-5(k)] indicates an intent to subject the losing party to an award of attorney's fees and costs that includes expenses incurred for administrative proceedings").

The time spent on the MCAD proceedings, which was related to the unsuccessful ADA and Chapter 151B claims and not required for the FMLA claim, can be segregated from the time expended on the FMLA claims and will be excluded from the fee award. *Compare Webb v. Bd. of Educ. of Dyer Cty.*, 471 U.S. 234, 244 (1985) ("[T]he District Court's decision to deny any fees for time spent pursuing optional administrative remedies [that were not required to pursue a remedy under 42 U.S.C. § 1983] was well within the range of reasonable discretion."); *Churchill*, 1998 WL 254080, at *6 (excluding attorney's fees for proceedings before the Pennsylvania Human Rights Commission, which were not required before bringing an FMLA suit). The invoices submitted show that Attorney Willis spent a total of 22 hours on MCAD-related proceedings on the following dates: February 11, 2014 (4.50 hours); February 12, 2014 (1.80); February 13, 2014 (.80); April 4, 2014 (.20); April 7, 2014 (4.00); April 8, 2014 (1.50); April 10, 2014 (2.00); April 11, 2014 (2.20); April 25, 2014 (3.00); July 11, 2014 (50% of 2.00 = 1.00);[2]

---

[2] The billing entry for July 11, 2014 shows 2.00 hours were spent discussing the status of the case with an MCAD investigator, researching removal, and beginning the draft of the court

July 25, 2014 (.20); August 7, 2014 (.40); and August 21, 2014 (.40). Accordingly, 22 hours of Attorney Willis' time at his hourly rate of $275 will be excluded from the requested fee award thereby reducing it by $6,050 (22 hours x $275/hour).

          c.      Hours expended should be reduced for preparation for the ADR hearing that Plaintiff cancelled.

Defendants object to including the hours Attorney McDonald expended to prepare for the ADR hearing that Plaintiff cancelled at the last minute. The court agrees that Defendants should not be required to pay for the hours spent on the ADR-related tasks, which turned out to be a waste of time. *See Grendel's Den, Inc.*, 749 F.2d at 950 (subtracting from the lodestar amount hours that are "duplicative, unproductive, excessive or otherwise unnecessary" in arriving at the number of hours productively spent); *Alfonso*, 66 F. Supp. 2d at 193 (deducting time plaintiff's counsel spent on unsuccessful mediation). According to the billing records, Attorney McDonald spent 19.8 hours preparing for the ADR hearing on the following dates: March 31, 2017 (1.20 hours); April 3, 2017 (1.00); April 4, 2017 (.50); April 5, 2017 (3.30); April 6, 2017 (6.90); April 7, 2017 (3.50); April 10, 2017 (1.10); April 11, 2017 (2.20); and April 12, 2017 (.10). The paralegal spent a total of 4.50 hours on April 3, 4, and 10, 2017. Because the court is excluding the time spent preparing for the ADR hearing, the fee request will be reduced by $5,940 (19.8 hours x $300) for Attorney McDonald's time and by $562.50 (4.50 hours x $125) for the paralegal's time, for a total reduction of $6,502.50.

          d.      Most hours expended for identified tasks were not unproductive, excessive, unnecessary, or duplicative.

Defendants challenge the following specific billed hours as unproductive, excessive, unnecessary, or duplicative (Dkt. No. 136 at 6):

---

complaint (Dkt. No. 134-1 at 4). Accordingly, the court attributes 50% of the time to work on the MCAD complaint.

(1)     11.50 hours for Attorney McDonald's review of pleadings, interrogatories, requests for production of documents, and medical records on September 8, 2015 and October 2, 5, and 6, 2015;

(2)     Attorney McDonald's time spent with Plaintiff at the emergency room after she fell ill during her deposition at Defendants' attorney's office on April 12, 2016;

(3)     One hour Attorney McDonald spent learning courtroom technology in preparation for trial on June 16, 2017; and

(4)     59.6 hours Attorney McDonald spent preparing Plaintiff's opposition to Defendants' motion for summary judgment from August 10 through August 19, 2016.

It is axiomatic that "[c]ourts may . . . reduce attorneys' fees based on duplication of effort or unreasonable expenditure of time." *Roggio v. Grasmuck*, 18 F. Supp. 3d 49, 57 (D. Mass. 2014).  In the court's view, with one exception, these challenged time entries are reasonable and are not excessive or duplicative.  First, from an examination of the billing records for the dates Defendant identifies, it does not appear that Attorney McDonald duplicated Attorney Willis' work when she took over the case and reviewed materials, including Plaintiff's extensive medical records.  However, on October 7, 2015, Attorney McDonald and Attorney Willis discussed the "case facts" during a telephone call (Dkt. No. 134-1 at 7).  The entry of 1.80 hours on that date includes the phone call and Attorney McDonald's review of documents and interrogatories (*id.*). The court attributes 50% of this time, .90 hour, to the phone call between Attorney McDonald and Attorney Willis and excludes this time as duplicative.  *See id.* (excluding time spent turning plaintiff's case over to a new legal team); *DSSDR, LLC v. Zenith Infotech, Ltd.*, Civil No. 13-10026-FDS, 2014 WL 2815769, at *4 (D. Mass. June 20, 2014) ("The work done by plaintiff's new counsel . . . to become acquainted to the case was . . . not reasonable because it was

duplicative."). Accordingly, Attorney McDonald's requested fee is reduced by $270 (.90 hour x $300). As to Defendants' second point, it was not unreasonable for Attorney McDonald to go to the emergency room with her client after she fell ill during her deposition at defense counsel's office, which was not near her home. Third, because Attorney McDonald's tutorial on using the courtroom's technology to display documents during trial was part of her trial preparation, the hour she spent was necessary and reasonable. *See AutoZone, Inc.*, 934 F. Supp. 2d at 352 (time expended on trial preparation is compensable).

Finally, in light of the issues raised in Defendants' motion for summary judgment, the approximately 60 hours Attorney McDonald spent preparing Plaintiff's opposition to the motion is not clearly excessive. Plaintiff's statement of material facts relied on twenty-six exhibits (Dkt. No. 65). Defense of Plaintiff's FMLA claim required analysis of a complex legal issue involving the conflict between CHD's call-in policy and the FMLA's regulations' requirements for employees giving notice of their absence. *See Boadi*, 239 F. Supp. 3d at 344-47. Moreover, Plaintiff's argument supporting the viability of her ADA and Chapter 151B claims involved analyzing cases discussing disability discrimination claims brought by employees whose illnesses prevented them from notifying their employers of their disabilities. *See id.* at 352-53. While comparison to other cases is not necessarily valuable in light of the differences between cases, the time spent by Plaintiff's attorney to oppose Defendants' dispositive motion does not fall within the range that some other courts have adjusted downward. *Contrast Walsh v. Bos. Univ.*, 661 F. Supp. 2d 91, 95, 110 (D. Mass. 2009) (approximately 118 hours spent by primary attorney to prepare plaintiff's opposition to summary judgment motion in case alleging employer's violations of the ADA, Chapter 151B, and FMLA were found to be excessive; the court reduced the attorney's time to 70 hours); *Horney v. Westfield Gage Co.*, 227 F. Supp. 2d

209, 216 (D. Mass. 2002) (84 hours to research and draft opposition to summary judgment motion was unreasonable in employment discrimination litigation and was reduced by thirty percent).

      B.      Expert Fees and Costs

Defendants assert that Plaintiff's request for $16,137.99 in expert fees and costs is excessive. In particular, Defendants contend that $1,050.36 of expenses for postage, copies, and parking should be eliminated because they are "expenses not normally billed separately to a client" (Dkt. No. 136 at 5). In addition, Defendants argue that Dr. Kadushin's fees of $10,537.50 should be reduced because the expert's "primary purpose" was to support Plaintiff's unsuccessful ADA and Chapter 151B claims and because his fees were inadequately documented (Dkt. No. 136 at 4-5).

The court finds no basis for eliminating the expenses for postage, copies, and parking and the expert fees. "[R]easonable expenses, necessary for the prosecution of a case, are ancillary to and may be incorporated as part of a fee award under a prototypical federal fee-shifting statute." *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 17 (1st Cir. 2011). Contrary to Defendants' claim, Plaintiff is entitled to recover the costs of postage, copies, and parking, which appear reasonable. *See id.* ("reasonable costs and expenses for travel, printing, and photocopying can be recovered in a fee-shifting proceeding . . . "); *Quint,* 245 F. Supp. 2d at 179 ("Costs incurred for transportation, lodging, parking, food and telephone are both reasonable and necessary."); *Churchill*, 1998 WL 254080, at *10 (allowing reasonable expenditures for postage).

In the court's view, Dr. Kadushin's fee is appropriate. His evaluation of Plaintiff and his testimony that she was unable to comply with CHD's call-in policy while she was hospitalized

were crucial to her success on the FMLA claim.  *See Horney*, 227 F. Supp. 2d at 222.

Accordingly, the court will approve $16,137.99 in expert fees and costs.[3]

      C.     Calculation

Based on the court's determinations, the court's award of attorney's fees and costs is summarized as follows:

| | | | |
|---|---|---|---|
| Attorneys' Fees Requested: | | | $209,268.00 |
| Less: | Reduction of Attorney Willis' fee for clerical tasks performed on 9/5/14 | 137.50 | |
| | Reduction of Attorney McDonald's fee for clerical tasks performed on 6/12/17 | 15.00 | |
| | Attorney Willis' time spent on MCAD proceedings | 6,050.00 | |
| | Attorney McDonald's and paralegal's time spent on ADR hearing | 6,502.50 | |
| | Attorney McDonald's time discussing facts with Attorney Willis | 270.00 | |
| | | | (12,975.00) |
| Total Attorneys' Fees | | | $196,293.00 |
| Plus:  Total Expert Fees and Costs | | | 16,137.99 |
| Total Attorneys' Fees, Expert Fees, and Costs | | | $212,430.99 |

IV.    CONCLUSION

For these reasons, Plaintiff's Motion for Attorneys' Fees and Costs (Dkt. No. 134) is

ALLOWED as modified by this court.  The total attorneys' fees and costs awarded to Plaintiff is

---

[3] Dr. Kadushin's fees were sufficiently documented in the itemized bills that Plaintiff submitted with her rebuttal to Defendants' opposition to her motion for attorneys' fees and costs (Dkt. Nos. 138, 138-1).

$212,430.99. This award is reasonable and appropriate in light of the positive result Plaintiff's

counsel achieved for her client.

      It is so ordered.

Dated:  November 8, 2017                    /s/ Katherine A. Robertson
                                                KATHERINE A. ROBERTSON
                                                United States Magistrate Judge